WILLIAM H. LEFFERTS & another *vs.* A. DAVIS. WELD & another.

Suffolk.   January 12, 1897. — February 24, 1897.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & MORTON, JJ.

*Contract — Construction — Delivery — Waiver.*

A contract for the sale of a quantity of hemp provided as follows : " To be shipped at Manila per sailing vessel or vessels direct to New York or via Hong Kong, during the months of April &/or May." The usual duration of the voyage by sailing vessel either from Manila or Hong Kong was about the same. The hemp was shipped on May 29 at Manila on board a steamer for Hong Kong, where it arrived on June 3, and on June 5 was transshipped on board a sailing vessel for New York. *Held,* that this was not a compliance with the terms of the contract as to the time of shipment.

A contract for the sale of a quantity of hemp provided as follows: " To be shipped at Manila per sailing vessel or vessels direct to New York or via Hong Kong during the months of April &/or May " On May 29 the hemp was shipped at Manila on board a steamer for Hong Kong, where it arrived on June 3, and on June 5 was transshipped on board a sailing vessel for New York. In July, the seller sent word to the buyer that the hemp had been shipped from Manila for transshipment to a vessel named, but did not inform him of the date of the transshipment. There was no further communication between the parties until the arrival of the vessel in New York in February; but in October the buyer had reason to suppose that the hemp had been put on board the sailing vessel in June, though he did not absolutely know this until shortly before her arrival. After he was notified of the arrival, he promptly informed the seller that he did not consider the delivery a good one under the contract, and declined to accept the hemp. *Held,* in an action against him for breach of the contract, that the facts did not require a finding of a waiver by him of a compliance with its terms.

CONTRACT, for breach of a written agreement, in refusing to accept 252 bales of Manila hemp.. Trial in the Superior Court, without a jury, before *Fessenden,* J., who reported the case for the determination of this court, in substance as follows.

The plaintiffs are a firm doing business in New York under the name of Morewood and Company, and the defendants are a firm doing business in Boston under the name of Aaron D. Weld's Sons.

On or about March 16, 1893, the plaintiffs and the defendants entered into a contract, through one John Lund, a broker in hemp then carrying on business in New York under the name of W. S. Daland, and then in the employ of the plaintiffs. Lund acted as agent for both parties in signing the contract. The material part of the contract, which was signed by " William S. Daland, Broker," was as follows:

" Sold for account of Messrs. Morewood & Co., Agents for Warner Blodgett & Co., Manila, to Aaron D. Weld's Sons, Agents, Boston, Mass., (1000) one thousand bales $^W_L{}^B$ Leyte Manila Hemp. No red hemp.    To arrive at the Port of New York, to be shipped at Manila per sailing vessel or vessels direct to New York or via Hong Kong during the months of April &/or May, 1893.  Name of vessel or vessels to be declared by sellers when known."

Manila is situated on the west coast of the island of Luzon, one of the Philippines, and Hong Kong is on the southeast coast of China and 650 miles north-northwest from Manila.    The usual course of sailing vessels from both places to New York is southerly through the Straits of Sunda, between Sumatra and Java.    The length of the voyage by sailing vessel from either place to New York is usually about the same, namely, from four to five months.

At the date of the making of this contract there were one or more regular lines of steamers running between Manila and Hong Kong, sailings from Manila to Hong Kong averaging ten per month; and there was usually a general ship at Hong Kong lying at her berth and bound direct for New York.    At this time, it would not have been according to the usual course of trade for sailing vessels at Manila bound for New York to proceed by way of Hong Kong; and when goods were sent from Manila to New York by way of Hong Kong it was the usual practice to send them to Hong Kong by steamer.    These facts were known to both parties at the time the contract was made.

After the making of this contract Warner Blodgett and Company shipped at Manila on the sailing ship El Capitan, which

on May 5, 1893, sailed from Manila direct to New York, 748 bales of hemp for delivery to the defendants under the contract, which hemp arrived at New York on September 15, 1893, and was accepted and paid for by the defendants. On May 29, 1893, Warner Blodgett and Company put on board the steamship Zafiro at Manila 252 bales of hemp of the quality called for by the contract for delivery to the defendants thereunder, and received therefor a bill of lading. The Zafiro left Manila for Hong Kong on May 31, 1893, with this hemp on board, and arrived at Hong Kong on June 3, 1893. On June 5, 1893, the hemp was shipped on board the sailing ship Iron Duke, then lying at Hong Kong and bound for New York, and a bill of lading was taken therefor. Two hundred and fifty-two bales of hemp would not be sufficient to load sailing vessels such as are employed in the trade between Manila and Hong Kong and New York.

The Iron Duke sailed from Hong Kong on July 2, 1893. On July 15, 1893, and as soon as the name of the Iron Duke was known to the plaintiffs, they wrote to Lund as follows: " We are advised by Messrs. Warner Blodgett & Co., Manila, that the remaining 252 Bales Hemp (of the 1000 Bales) sold to Messrs. Aaron D. Weld's Sons, on the 16th March, had been shipped to Hong Kong, for transshipment to ship Iron Duke."

The defendants were duly notified by the broker of the contents of this letter. It was in accordance with the usual practice in this trade to declare the name of the vessel, as provided in the contract of March 16, 1893, to the broker. The Iron Duke arrived at New York on February 8, 1894. Upon her arrival the plaintiffs notified Lund that they proposed to deliver the hemp to the defendants in performance of the contract, and on the next day the defendants wrote to the plaintiffs as follows: " We are advised by Mr. Daland that the Iron Duke has arrived with 252 bales in completion of contract made March 16th. Parties for whom we made that contract advise they do not think this 252 bales were on board sailing vessel in April or May either in Manila or Hong Kong, and if so, under the contract, this is not a good delivery, and they must decline to receive the same."

This letter was followed by a correspondence between the parties, extending through the month of February, in which the plaintiffs insisted that the shipment of the hemp was in accordance with the contract, and the defendants contended that the delivery was not a good one under the contract and declined to accept the hemp.

The average time for loading a general sailing ship at Manila or at Hong Kong bound for New York is from thirty to sixty days, according to the size of the vessel.

The defendants knew in September, 1893, the date of the sailing of the Iron Duke from Hong Kong; and they had reason to suppose, some time in October, 1893, that the hemp in controversy had been put on board her at Hong Kong in June, 1893, though they did not absolutely know this until shortly before her arrival in New York.

It further appeared that on February 28, 1894, the plaintiffs sold the hemp in New York for the account of the defendants; and the market price thereof having fallen below the price named in the contract, the loss thereon was $1,173.46, which, with interest thereon from that date, the parties agreed were the damages which the plaintiffs were entitled to recover of the defendants in this action, if they were entitled to recover anything.

Upon the foregoing facts, the plaintiffs asked the judge to rule as follows:

" 1. On all the evidence the finding must be for the plaintiffs.

" 2. The terms of the contract with regard to shipment were satisfied if the hemp was shipped from Manila in May, 1893, and was transshipped and placed on board a sailing vessel at Hong Kong bound for New York, which the plaintiffs had reason to believe would sail within a reasonable time after shipment.

" 3. A delay of a month in the sailing of the Iron Duke was not an unreasonable delay in view of the evidence.

"4. The defendants, as matter of law, have waived their rights to insist that the sailing of the Iron Duke was an unreasonable time after the shipment, and that shipment should have been made from Manila to Hong Kong by sailing vessel."

The judge declined so to rule, and found for the defendants.

If the judge erred in the finding, or in the refusal to rule as requested, the finding was to be set aside and a new trial ordered; otherwise, judgment was to be entered on the finding.

*C. K. Cobb*, for the plaintiffs.

*M. M. Weston*, for the defendants.

ALLEN, J. The plaintiffs concede that, in order to make a good delivery, they must comply with the terms of the contract as to shipment. The first question, therefore, is as to the meaning of the contract.

It may be assumed, as the parties themselves appear to have understood, that the shipment on the sailing vessel or vessels need not be made at Manila, and that the hemp might be sent by steamer to Hong Kong, to be there shipped by sailing vessel or vessels to New York; but we think the contract requires the shipment on the sailing vessel or vessels to be made during April or May. One object of the provision as to the time of shipment was to insure that the hemp should be on board the sailing vessel or vessels, in readiness for the voyage, within or during the time specified. The usual duration of the voyage by sailing vessel either from Manila or from Hong Kong was about the same. It may have been a matter of indifference from which port the vessel should sail, but the contract makes the time of shipment material. Shipping the hemp at Manila on board a steamer for Hong Kong would not accomplish the same purpose, because there might be a delay at Hong Kong. In point of fact, the steamer upon which the hemp was shipped at Manila did not arrive at Hong Kong till June 3, and was not shipped on board the sailing vessel till June 5. This was not a compliance with the contract on the plaintiffs' part. *Bowes v. Shand*, 2 App. Cas. 455.

The facts shown did not require a finding of a waiver on the part of the defendants. On July 15, 1893, the plaintiffs sent word to them that the hemp had been shipped from Manila to Hong Kong for transshipment to ship Iron Duke, but did not inform them of the date of the shipment on board the Iron Duke. If the plaintiffs had mentioned this fact, the defendants might have been called upon to make their objection immediately, if they intended to insist upon it. But, so far as appears, there was no further communication between the par-

ties until the arrival of the vessel in New York, in February, 1894. It is found that in October, 1893, the defendants had reason to suppose that the hemp had been put on board the sailing vessel in June, though they did not absolutely know this until shortly before her arrival in New York; just how long before is not stated. Under these circumstances, they were not bound, as matter of law, to volunteer a statement while the vessel was at sea that they considered the contract off, by reason of the plaintiffs' non-compliance with its terms. After the arrival of the vessel was notified to the defendants, they promptly made their objection. It does not appear that they intended to waive any rights, or that the plaintiffs took or forbore any action in consequence of the defendants' omission to make objection earlier. *Fort Payne Coal & Iron Co.* v. *Webster*, 163 Mass. 134. *Parks* v. *Smith*, 155 Mass. 26, 33. *Holdsworth* v. *Tucker*, 143 Mass. 369, 374.

*Judgment for the defendants.*